UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-20163-BLOOM/Otazo-Reyes

CRREELED, INC,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

    Defendants.
_____/

**ORDER GRANTING *EX PARTE* APPLICATION
FOR ENTRY OF TEMPORARY RESTRAINING ORDER**

**THIS CAUSE** is before the Court upon the Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Plaintiff's Motion for TRO"). The Plaintiff CreeLED, Inc. moves, *ex parte*, for entry of a temporary restraining order against the Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" to the Complaint, (collectively "Defendants"), *see* ECF No. [6-1], and an order restraining the financial accounts used by Defendants pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and the All Writs Act, 28 U.S.C. § 1651(a). The Court has carefully considered the Motion, the record, and the applicable law. For the reasons stated below, the Plaintiff's Motion for TRO is **GRANTED**.

**I.    FACTUAL BACKGROUND**

Plaintiff is the owner of the federally registered trademarks identified in Schedule B (the "CreeLED Marks"), ECF No. [6-3] at 6-12, attached to the Declaration of David Marcellino ("Marcellino Decl."), *Id*. at 1-5. The CreeLED Marks are used in connection with the design,

marketing, and distribution of various high-quality goods and merchandise relating to lighting applications. *See Id*. at ¶ 5.

The Defendants, through the various Internet based e-commerce stores operating under the seller identities and domain names identified on Schedule "A" to the Complaint (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what the Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of The CreeLED Marks. *Id*. ¶¶ 10-14; *see also* ECF No. [6-4] at ¶¶ 5-6; *see also* ECF Nos. [6-5]-[6-11].

Although each of the Defendants may not copy and infringe each of the CreeLED Marks for each category of goods protected, the Plaintiff has submitted sufficient evidence showing each of the Defendants has infringed at least one of the CreeLED Marks. *See* ECF No. [6-4] at ¶ 4. The Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the CreeLED Marks. *See* ECF No. [6-3] at ¶ 11.

The Plaintiff investigated the promotion and sale of counterfeit and infringing versions of the Plaintiff's branded and protected products by the Defendants. *Id*. at ¶¶ 11- 14. Plaintiff accessed each of the e-commerce stores operating under the Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeits of The CreeLED Marks at issue in this action, and requested each product to be shipped to an address in the Southern District of Florida. *See id.; see also* ECF No. [6-4] at ¶ 5. The Plaintiff conducted a review and visually inspected Plaintiff's branded items for which orders were initiated by Plaintiff's third-party investigator via the Seller IDs and determined the products were nongenuine, unauthorized versions of the Plaintiff's products. *See id.*

## II. LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

## III. CONCLUSIONS

The declarations submitted in support of Plaintiff's *Ex Parte* Application for Temporary Restraining Order support the following conclusions of law:

A. The Plaintiff has a strong probability of proving at trial that (1) consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the CreeLED Marks, and that (2) the products Defendants are selling and promoting for sale are copies of the Plaintiff's products which bear copies of the CreeLED Marks.

B. Because of the infringement of the CreeLED Marks, the Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in the Plaintiff's Complaint, Motion for TRO, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiff and to consumers before the Defendants can be heard in opposition unless the Plaintiff's request for *ex parte* relief is granted:

1. The Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of the Plaintiff's rights;

2. There is good cause to believe that more counterfeit and infringing products bearing the Plaintiff's trademarks will appear in the marketplace; consumers are likely to be misled, confused, and disappointed by the quality of these products; and Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates; and

3. There is good cause to believe that if the Plaintiff proceeds on notice to the Defendants of this Application for Temporary Restraining Order, the Defendants can easily and quickly change the ownership or modify domain registration and e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of Seller IDs thereby thwarting the Plaintiff's ability to obtain meaningful relief.

C. The balance of potential harm to the Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to the Plaintiff, its reputation, and its goodwill as a

manufacturer and distributor of quality products if such relief is not issued.

D. The public interest favors issuance of the temporary restraining order to protect the Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

E. Under 15 U.S.C. § 1117(a), the Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and sales of goods bearing counterfeits and infringements of the CreeLED Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G. In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that the Defendants have violated federal trademark laws, the Plaintiff has good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Temporary Restraining Order, **ECF No. [6]**, is **GRANTED**, under the terms set forth below:

(1) Each of the Defendants, its officers, directors, employees, agents, subsidiaries,

distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are temporarily restrained as follows:

        a.      From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the CreeLED Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff;

        b.      From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the CreeLED Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the CreeLED Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants; and

        c.      From using any reproduction, counterfeit, copy, or colorable imitation of the CreeLED Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants.

      (2)      Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of the CreeLED Marks, or confusingly similar trademarks, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under

the Seller IDs.

(3)     Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

(4)     Upon receipt of notice of this Order, the Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the "Third Party Providers"), shall within five (5) business days after receipt of notice of this Order,

a.     Restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

b.     Provide Plaintiff expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs identified on Schedule "A" to the Complaint, as well as any other

accounts of the same customer(s); (ii) the identity and location of the Defendants identified in Schedule "A," including all known contact information including any and all known aliases and associated e-mail addresses; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related.

(5) Any Defendant or Third Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(6) The Clerk of the Court is directed to issue a single original summons in the name of "The Individuals, Partnerships and Unincorporated Associations Identified on Schedule 'A' of the Complaint" that shall apply to all Defendants. The combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

(7) This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the CreeLED Marks at issue in this action and/or unfairly competing with Plaintiff.

(8) This Order shall remain in effect from the date of entry of this Order to February 6, 2023, at 11:59 p.m.

(9) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), the Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In

the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

(10) After the Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, the Plaintiff shall serve copies of the Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs or by providing a copy of this Order by email to the marketplace platforms for each of the Seller IDs so that the registrar, or marketplace platform, in turn, notifies each of the Defendants of the Order, or by other means reasonably calculated to give notice which is permitted by the Court. In addition, the Plaintiff shall post copies of the Complaint, Application for Temporary Restraining Order, this Order, and all other documents filed in this action on the website at https://www.dropbox.com/scl/fo/o73tpu9j77732wdh1tt9t/h?dl=0&rlkey=s8ywi7tgru0fqegoah6tslvha, and shall provide the address to the website to the Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof. The Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to the Defendants by regularly updating the website located at https://www.dropbox.com/scl/fo/o73tpu9j77732wdh1tt9t/h?dl=0&rlkey=s8ywi7tgru0fqegoah6tslvha, or by other means reasonably calculated to give notice which is permitted by the Court.

(11) A **hearing** is set before this Court via **Zoom teleconference** on **February 6, 2023, at 9:00 a.m.**, at which time Defendants and/or any other affected persons may challenge the

appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction. **The Zoom hyperlink is: https://www.zoomgov.com/j/1616060711?pwd=MFo5T2t4cGxUYWZ2UjNFRTEvbW5iQT09. Alternatively, the Zoom Meeting ID is: 161 606 0711; and the Passcode is: 555084.**

(12) Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d); Fed. R. Civ. P. 65, the All Writs Act, 28 U.S.C. § 1651(a); and this Court's inherent authority.

    a. Any response or opposition to Plaintiff's Motion for TRO must be filed and served on Plaintiff's counsel forty-eight (48) hours prior to the hearing scheduled for **February 6, 2023, at 9:00 a.m.**, and filed with the Court along with Proof of Service.

    b. Plaintiff shall file any Reply Memorandum twenty-four (24) hours prior to the hearing set for **February 6, 2023, at 9:00 a.m**.

(13) The Clerk shall file this Order under seal until further order of the Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 23, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of Record