UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 23-cv-20163-BLOOM/Otazo-Reyes**

CREELED, INC.,

    Plaintiff,

v.

INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.
_____/

**ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**

**THIS CAUSE** is before the Court upon Plaintiff CREELED, INC.'s Motion for Entry of Final Default Judgment, ECF No. [65] ("Motion"). Defendants[1] have failed to appear, answer, or otherwise plead to the Complaint, [ECF No. 1], despite having been served on February 2, 2023. *See* ECF No. [16]. The Court has carefully considered the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the following reasons, Plaintiff's Motion is granted.

**I.    INTRODUCTION**

On January 13, 2023, Plaintiff initiated this action by filing a Complaint, in which it asserted counts of false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), common law unfair competition, and common law trademark infringement claims. ECF No. [1]. The Complaint alleges that Defendants are advertising, using, selling, promoting, and

---

[1] Defendants are the Individuals, Partnerships, or Unincorporated Associations identified on Schedule "A" of Plaintiff's Motion, and Schedule "A" of this Order.

distributing, counterfeits and confusingly similar imitations of Plaintiff's registered trademarks within the Southern District of Florida by operating the Defendants' Internet based e-commerce stores operating under each of the Seller IDs identified on Schedule "A" attached to Plaintiff's Motion for Entry of Final Default Judgment (the "Seller IDs"), ECF No. [65-1]. *See generally* ECF No. [1].

Plaintiff further asserts that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff because Defendants have 1) deprived Plaintiff of its right to determine the manner in which his trademarks are presented to consumers; (2) deceived the public as to Plaintiff's sponsorship of and/or association with Defendants' counterfeit products and the websites on online storefronts through which such products are sold, offered for sale, marketed, advertised, and distributed; (3) wrongfully traded and capitalized on Plaintiff's reputation and goodwill and the commercial value of the Plaintiff's trademarks; and (4) wrongfully damaged Plaintiff's ability to market his branded products and educate consumers about his brand via the Internet in a free and fair marketplace. *Id*. ¶¶ 37-43.

In its Motion, Plaintiff seeks the entry of default final judgment against Defendants for false designation of origin, common law unfair competition, and common law trademark infringement. *See generally* ECF No. [65]. Plaintiff further requests that the Court (1) enjoin Defendants unlawful use of Plaintiff's trademarks; (2) award Plaintiff damages; and (3) instruct any third party financial institutions in possession of any funds restrained or held on behalf of Defendants to transfer these funds to the Plaintiff in partial satisfaction of the award of damages. *Id*.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). "[B]efore entering a default *judgment* for damages, the district court must ensure that the well-pleaded

allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (emphasis in original). "[A] default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citations omitted).

If the complaint states a claim, the Court must then determine the amount of damages and, if necessary, "may conduct hearings . . . [to] determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). However, where all the essential evidence to determine damages is on the paper record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also Evans v. Com. Recovery Sys., Inc.*, No. 13-61031-CIV, 2013 WL 12138555, at *1 (S.D. Fla. Aug. 26, 2013) (following the entry of a default judgment, damages may be awarded 'without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation,' so long as all essential evidence is a matter of record." (citation omitted)).

## II. FACTUAL BACKGROUND

Plaintiff is the owner of following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "CreeLED Marks"):

|   | Classes | Trademark | Registration No. |
|---|---------|-----------|------------------|
| 1 | 09 Int. | CREE | 2,440,530 |

| | | | |
|---|---|---|---|
| 2 | 42 Int. | CREE | 4,597,310 |
| 3 | 35 Int. | CREE | 4,896,239 |
| 4 | 39 Int. | CREE | 4,787,288 |
| 5 | 09 Int. | CREE | 3,935,628 |
| 6 | 11 Int. | CREE | 3,935,629 |
| 7 | 40 Int. | CREE | 3,938,970 |
| 8 | 42 Int. | CREE | 4,026,756 |
| 9 | 09 Int. | CREE | 4,641,937 |
| 10 | 37 Int. | CREE | 4,842,084 |
| 11 | 09 Int., 41 Int. | CREE | 4,767,107 |
| 12 | 09 Int., 11 Int., 35 Int., 36 Int., 37 Int., 39 Int., 40 Int., 41 Int., 42 Int. | CREE & Design (2D Trisected Diamond) | 6,091,202 |

| 13 | 09 Int., 11 Int., 37 Int., 39 Int. | CREE & Design (2D Trisected Diamond) | 5566249 |
|----|------------------------------------|--------------------------------------|---------|
| 14 | 09 Int. | CREE & Design (solid) | 4,234,124 |
| 15 | 11 Int. | CREE & Design (solid) | 4,233,855 |
| 16 | 37 Int. | CREE & Design (solid) | 4933004 |
| 17 | 09 Int., 41 Int. | CREE & Design (solid) | 4771402 |
| 18 | 42 Int. | CREE & Design (solid) | 4,597,311 |
| 19 | 09 Int. | CREE & Design (striped) | 2,452,761 |
| 20 | 09 Int. | CREE & Design (striped) | 3,935,630 |
| 21 | 42 Int. | CREE & Design (striped) | 2,922,689 |
| 22 | 09 Int. | CREE Design - Diamond Design (Solid) | 2,504,194 |
| 23 | 11 Int., 35 Int., 40 Int. | CREE Design (2D Trisected Diamond) | 6,315,812 |

| 24 | 09 Int., 11 Int., 37 Int., 39 Int., 41 Int., 42 Int. | CREE Design (2D Trisected Diamond) | 5,571,046 |
|---|---|---|---|
| 25 | 09 Int. | CREE Design (striped) | 3,998,141 |
| 26 | 11 Int. | CREE EDGE | 5,745,621 |
| 27 | 09 Int. | CREE LED LIGHT & Design | 3,327,299 |
| 28 | 09 Int., 11 Int. | CREE LED LIGHTING | 3,891,765 |
| 29 | 09 Int., 11 Int. | CREE LED LIGHTING & Design | 3,891,756 |
| 30 | 09 Int., 11 Int. | CREE LEDS & Design (2D) | 5,846,029 |
| 31 | 09 Int. | CREE LEDS & Design (solid) | 3,360,315 |
| 32 | 11 Int. | CREE LEDS & Design (solid) | 4,558,924 |
| 33 | 11 Int. | CREE LIGHTING | 6,125,508 |
| 34 | 37 Int., 39 Int., 41 Int., 42 Int. | CREE LIGHTING | 6,251,971 |

| 35 | 11 Int. | CREE LIGHTING & Design (horizontal) | 6,228,836 |
|---|---|---|---|
| 36 | 37 Int., 39 Int., 41 Int., 42 Int. | CREE LIGHTING & Design (horizontal) | 6,234,496 |
| 37 | 11 Int. | CREE LIGHTING & Design (vertical) | 6,234,497 |
| 38 | 09 Int. | CREE TRUEWHITE | 4,029,469 |
| 39 | 11 Int. | CREE TRUEWHITE | 4,091,530 |
| 40 | 09 Int. | CREE TRUEWHITE TECHNOLOGY & Design (solid) | 5,022,755 |
| 41 | 11 Int. | CREE TRUEWHITE TECHNOLOGY & Design (solid) | 4,099,381 |
| 42 | 11 Int. | CREE TRUEWHITE TECHNOLOGY & Design (striped) | 4,286,398 |
| 43 | 09 Int. | CREE VENTURE LED COMPANY & Design (horizontal) | 5,852,185 |
| 44 | 09 Int. | CREE VENTURE LED COMPANY & Design (vertical) | 5,852,184 |

| 45 | 09 Int. | EASYWHITE | 3,935,393 |
|---|---|---|---|
| 46 | 11 Int. | EASYWHITE | 4,060,563 |
| 47 | 42 Int. | EASYWHITE | 4,384,225 |
| 48 | 09 Int. | EZBRIGHT | 3,357,336 |
| 49 | 09 Int. | GSIC | 2,012,686 |
| 50 | 09 Int. | J SERIES | 5,852,400 |
| 51 | 09 Int. | MEGABRIGHT | 2,650,523 |
| 52 | 09 Int. | RAZERTHIN | 2,861,793 |
| 53 | 09 Int. | SC3 TECHNOLOGY (stylized) | 4,502,559 |
| 54 | 09 Int. | SC5 TECHNOLOGY | 5,256,643 |
| 55 | 9 Int. | SCREEN MASTER | 5,067,029 |

| 56 | 09 Int., 11 Int. | TRUEWHITE | 3,812,287 |
|---|---|---|---|
| 57 | 09 Int. | TRUEWHITE TECHNOLOGY & Design | 3,888,281 |
| 58 | 11 Int. | TRUEWHITE TECHNOLOGY & Design | 3,888,282 |
| 59 | 09 Int. | ULTRATHIN | 4,110,443 |
| 60 | 09 Int. | XBRIGHT | 2,644,422 |
| 61 | 09 Int. | XLAMP | 3,014,910 |
| 62 | 09 Int. | XM-L | 5,294,417 |
| 63 | 09 Int. | XTHIN | 2,861,792 |

*See* ECF No. [1] ¶ 23. The CreeLED Marks are used in connection with the design, marketing, and distribution of high-quality goods in at least the categories identified above. *Id*. ¶ 24.

Although each Defendant may not copy and infringe each of Plaintiff's trademarks for each category of goods protected, Plaintiff has submitted sufficient evidence showing each Defendant has infringed the CreeLED Marks for at least one category of goods. *See* ECF No. [6-3] ¶¶ 11-14; ECF Nos. [6-5]-[6-11] ("Schedule 'C'"). Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable

imitations of the of the CreeLED Marks. ECF No. [1] ¶¶ 32, 36; ECF No. [6-3] ¶¶ 11-14.

As part of his ongoing investigation regarding the sale of counterfeit and infringing products, Plaintiff hired a third party investigatory to access Defendants' Internet based e-commerce stores operating under each of the Seller IDs. *See* ECF No. [6-3] ¶ 12. The third party investigator initiated orders from each Seller IDs for the purchase of various products, all bearing, or suspected of bearing, counterfeits of the CreeLED Marks, and requested each product to be shipped to an address in the Southern District of Florida. *Id*. ¶ 13. Accordingly, Defendants' goods are being promoted, advertised, offered for sale, and sold by Defendants within this district and throughout the United States. *See* ECF No. [6-4] ¶ 5; *see also* ECF Nos. [6-5]-[6-11]. A representative for Plaintiff personally analyzed the CreeLED branded items wherein orders were initiated via each of the Seller IDs by reviewing the e-commerce stores operating under each of the Seller IDs, or the detailed web page captures and images of the items bearing the CreeLED Marks, and concluded the products were non-genuine, unauthorized CreeLED products. ECF No. [6-3] ¶ 14.

### III.   DISCUSSION

#### A.   Claims

##### 1.   Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I)

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was

the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

### 2. False Designation of Origin Pursuant to § 43(A) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II)

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' services by Plaintiff. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992).

### 3. Common Law Unfair Competition and Trademark Infringement (Counts III and IV)

Whether a Defendant's use of a Plaintiff's trademarks created a likelihood of confusion between the Plaintiff's and the Defendant's services or goods is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)."); *see also Boston Prof'l Hockey Ass'n,*

*Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975)[2] ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

**B.    Liability**

The well-pled factual allegations of Plaintiff's Complaint properly allege the elements for each of the claims described above. *See* ECF No. [1]. Moreover, the factual allegations in Plaintiff's Complaint have been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

**C.    Injunctive Relief**

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered before October 1, 1981.

respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiff has carried its burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiff's Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. [1] ¶¶ 50, 58. Further, the Complaint alleges, and the unauthorized CreeLED products sold, offered for sale, marketed, advertised, and distributed by Defendants are virtually identical in appearance to Plaintiff's genuine CreeLED products and that consumers viewing Defendants' counterfeit products would actually confuse them for Plaintiff's genuine products. *See id*. ¶ 53. "The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe

Defendants' counterfeit goods are genuine goods originating from, associated with, or approved by Plaintiff." *See id.* ¶ 31.

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs because Plaintiff cannot control the quality of what appears to be its CreeLED products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting and infringing actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which are illegal acts.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' counterfeit products. *See Nike, Inc. v. Leslie*, No. 85-960 CIV-T-15, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defendants have created an Internet-based infringement scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion

injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities.

### D. Statutory Damages for the Use of Infringing Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of products, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 or more than $200,000.00 per counterfeit mark per type of good or service. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or service. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff has elected to recover an award of statutory damages as to Count I of the Amended Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 WL 1652044, at *7 (S.D. Fla. Apr. 23, 2014) (*citing Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.,* S. REP. NO. 104-177,

pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d at 1232 n.13 ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Complaint, which are taken as true, clearly establish Defendants intentionally copied the CreeLED Marks for the purpose of deriving the benefit of Plaintiff's world-famous reputation.

The evidence in this case demonstrates that each Defendant sold, promoted, distributed, advertised, and/or offered for sale products bearing marks which were in fact confusingly similar to at least one of the CreeLED Marks. *See* ECF No. [1] ¶¶ 30-43. Based on the above considerations, Plaintiff suggests the Court award statutory damages of $20,000.00 against each Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(a). The Court finds that this award of damages

falls within the permissible statutory range under 15 U.S.C. § 1117(a) and is just.

  **E. Damages for Common Law Unfair Competition and Trademark Infringement**

Plaintiff's Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count III) and trademark infringement (Count IV). Judgment on Count III and Count IV are also limited to the amount awarded pursuant to Count I and Count II and entry of the requested equitable relief.

**IV. CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion, ECF No. [65] is **GRANTED** against those Defendants listed in the attached Schedule "A." Final Default Judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 11, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record